WILLIAM V. PRINCE ET AL. v. GEORGE IRELAND ET AL., MANAGERS OF THE BUCKSHUTEM MEADOW COMPANY.

Argued February 15, 1910—Decided October 13, 1910.

1. An assessment imposed by the managers of a company organized under the Meadow and Swamp acts cannot be sustained against lands clearly without the metes and bounds of the company, where their owner has had no opportunity to participate in the management of the enterprise.

2. Alleged laches, and the payment of a former bill to the company by the prosecutor "without prejudice." cannot confer jurisdiction upon a meadow company to impose an assessment where the company is without power or authority to assess in the first instance.

On writ of *certiorari* removing the assessments.

Before Justices REED, TRENCHARD and MINTURN.

For the plaintiff, *Herbert C. Bartlett.*

For the respondents, *Walter H. Bacon.*

The opinion of the court was delivered by

MINTURN, J.   The legality of two assessments imposed by the Buckshutem Meadow Company upon the meadow lands of the prosecutor, in the county of Cumberland, is presented for our consideration upon this writ of *certiorari.*

The company was incorporated under the provisions of an act entitled "An act to enable the owners of tide swamps and marshes to improve the same, and the owners of meadows already banked in and held by different persons to keep the same in repair." *Gen. Stat., p.* 2022 ; *Nix. Dig.* 716.

Thereafter the managers of the company entered into an agreement with Norton P. Lore, Jr., and Charles G. Leake, then owners of the lands now the property of the prosecutor Prince, and with other owners contiguous to the lands of the company, whereby it was agreed that each party thereto

would pay his *pro rata* share of the expense of the cost of construction of a new meadow bank. The agreement further provided that Lore and Leake would include their meadow lands in a new company to be formed, so as to comprise within its jurisdiction the lands included in the Buckshutem company's jurisdiction and the lands of Lore and Leake. The agreement in its preamble expresses its object to be to protect the lands included within the bounds of the company's ownership and to construct a bank or banks on lands not within such bounds. It was executed on January 31st, 1894, but was not recorded until December 30th, 1908, and in the interim the lands of Lore and Leake had twice changed ownership. While they were the property of Emma L. Chenoweth, and on November 17th, 1906, they were assessed by the company, and again on September 21st, 1908, after the prosecutor Prince became their owner; and these assessments form the subject of this controversy. Their validity is contested by the prosecutor upon various grounds of procedure, but the fundamental objection presented is that of want of jurisdiction in the meadow company to levy the assessment by reason of the fact that the prosecutor concededly was not a member of the company, and that his lands were not included within the metes and bounds of the company's territorial jurisdiction. The company meets this insistment and seeks to sustain its assessments upon the strength of the agreement referred to, and upon the payment by the prosecutor of a bill for materials and labor furnished for repairing the bank, from which it is claimed the jurisdiction of the company over these lands was recognized and consented to by the prosecutor.

We perceive no evidence in this agreement of any intent upon the part of Lore and Leake to subject their lands to the jurisdiction of this company; but, on the contrary, we conceive that in every paragraph the agreement manifests their *status* as independent contractors. This *status* the managers of the company recognized in the preamble of the agreement, wherein is recited that the moving cause of the agreement was the construction of a bank for the protection

of the land included within the bounds of the company, "on land not within said bounds," and concludes with the compact upon the part of Lore and Leake to enter a new company, "to be formed of the tract comprised within the bounds of the Buckshutem Meadow Company and the tracts of meadow of the said Norton P. Lore, Jr., and Charles G. Leake," which company was never in fact organized.

In like manner, the payment of the bill for material and labor, by the prosecutor to the company, conferred no jurisdiction to assess the lands for non-payment thereof; and did not operate to confer jurisdiction where none in fact existed. The payment was entirely voluntary, and contains the specific statement, indicating and emphasizing, as it were, the prosecutor's *status,* that it was made "without prejudice" to the prosecutor's rights.

Nor can these assessments be supported legally, upon any inaction, or apparent indifference, otherwise tantamount to laches, in the prosecutor, if the fundamental and inherent defect lies not in the mode of levying the assessments, but in the fact that the body imposing them is without jurisdiction to give them legal vitality. The laches of the prosecutor might be invoked to sustain the assessments if they were otherwise legal. But the prosecutor's insistment is, that the company never acquired jurisdiction, because he was not a member of the company, and his lands were never comprehended within its metes and bounds. We have found, from the testimony, such to be the facts, and in that posture of affairs, assessments of this character, lacking in the fundamental essence of jurisdiction, have repeatedly been set aside by this court, where otherwise the claim of laches would have obtained judicial recognition. *Slate, Fennimore,* v. *Clothier,* 1 *Vroom* 351; *State, Evans,* v. *Jersey City,* 6 *Id.* 381; *State, Baxter,* v. *Jersey City,* 7 *Id.* 188; *State, Kirkpatrick,* v. *Commissioners,* 13 *Id.* 510; *State* v. *Jersey City,* 16 *Id.* 256; *Cooley Const. Lim.* 205.

The crucial test of liability in a situation of this character was enunciated by Mr. Justice Dixon in this court, in his opinion in *Benjamin* v. *Bog and Fly Meadow Co.,* 39 *Vroom*

197. The assessment in that cause was imposed by direct statutory authority upon lands outside the lands of the meadow company; and the assessment was defended upon the strength of "inveterate usage," as a part of our common law, upon the theory adopted by the Court of Errors and Appeals in *Hoagland* v. *Wurts,* 12 *Id.* 175. But Mr. Justice Dixon differentiates usage where the complaining party is represented in the transaction from usage where the like privilege is denied to him, and says: "One essential feature of this usage is, we think, that the parties who are to be charged with the expenses of the improvement, shall have the right of participating in the control of the undertaking. But this essential is ignored in the supplements of 1875 and 1894, which seek to charge the owners of land outside of the bog and fly meadow, with part of the expense of the drainage, without giving them any voice in the management of the work." So, *a fortiori,* in the case at bar, where the assessment is supported, not by any statutory enactment, but by the unsupported initiative of the meadow company, the affirmative answer to this fundamental inquiry of representation or non-representation is *sine qua non* to the constitutional exercise of the delegated power of taxation and assessment and must furnish the test of its legality.

In the early case of *State* v. *Creek Company,* 2 *Gr.* 301, Chief Justice Hornblower expressed the underlying sentiment, condemnatory of the exercise of such a power, when he said: "The powers granted to the company by the legislature are extensive and of an important and serious character, not only imposing obligations and burdens on individuals against their will, and, it may be, against their interest, but affecting the rights and property, if not the very inheritance, of women and children. It is a special, extraordinary and delegated power, and those who would avail themselves of the advantage it gives them, must take the law for their guide, and regulate themselves by its provisions."

We think this contention of the prosecutor is fully sustained by the proofs, and therefore conclude that these assessments must be vacated.